# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### EASTERN DIVISION

MARCELLAS HARLAN,  ◊
                   ◊
    Plaintiff,  ◊
                   ◊
VS.                ◊       No. 04-1218-T/An
                   ◊
SHELIA MARTIN, ET AL.,  ◊
                   ◊
    Defendants.  ◊

---

ORDER DIRECTING CLERK TO MODIFY THE DOCKET
ORDER ON MOTIONS TO AMEND AND SUPPLEMENT COMPLAINT
ORDER ASSESSING $150 FILING FEE
ORDER OF DISMISSAL
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
NOTICE OF APPELLATE FILING FEE

---

Plaintiff Marcellas Harlan, Tennessee Department of Correction ("TDOC") prisoner number 211002, who is currently an inmate at the Whiteville Correctional Facility ("WCF") in Whiteville, Tennessee, filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 on September 9, 2004 in connection with his previous confinement at the Hardeman County Correctional Facility ("HCCF") in Whiteville, Tennessee.

The first issue to be considered is the identity of the plaintiff to this action. Harlan purports to file this action on his own behalf and on behalf of three other inmates who were previously confined at the HCCF, Kenvin [sic] Hooks, TDOC number 151798, who is

This document entered on the docket sheet in compliance
with Rule 58 and/or 79 (a) FRCP on ___11-30-05___

17

currently confined at the South Central Correctional Facility in Clifton, Tennessee; Andrew Young, TDOC number 90078, who is currently at the West Tennessee State Penitentiary in Henning, Tennessee; and Timothy Cartwright, TDOC number 133349, who is currently released on parole. However, only Harlan signed the complaint and all other documents filed with the Clerk, and only Harlan has submitted an *in forma pauperis* affidavit. Accordingly, the documents submitted by plaintiff do not establish that Hooks, Young, and Cartwright consented to the filing of this lawsuit.

Moreover, a party in federal court must proceed either through licensed counsel or on his own behalf. See 28 U.S.C. § 1654; see also Fed. R. Civ. P. 11(a) ("[e]very pleading, written motion, and other paper shall be signed by at least one attorney of record in the attorney's individual name, or, if the party is not represented by an attorney, shall be signed by the party"). No *pro se* plaintiff may sign pleadings on behalf of another plaintiff. Johns v. County of San Diego, 114 F.3d 874, 876 (9th Cir. 1997) ("While a non-attorney may appear pro se on his own behalf, '[h]e has no authority to appear as an attorney for others than himself.'"); Mikeska v. Collins, 928 F.2d 126 (5th Cir. 1991); Bonacci v. Kindt, 868 F.2d 1442, 1443 (5th Cir. 1989). As Harlan is the only person who has signed the complaint and the other filings in this matter, Harlan is the only plaintiff. The Clerk of Court is directed to modify the docket to remove Hooks, Young, and Cartwright as parties to this action. The Clerk is further directed to send copies of this order to Hooks, Young, and Cartwright, to the extent they can be located, to correct any misimpression they may have

about their status in this case.

Since the commencement of this action, Harlan has filed several motions. On September 17, 2004, plaintiff filed two documents, a "Motion to Amend Complaint" and a "Motion to Amend Complaint to Add Defendants." On September 20, 2004, plaintiff filed another motion, entitled "Motion to Amend Relief Sought in Complaint."[1] Finally, on November 29, 2004, plaintiff filed motions entitled "Motion to File an Amended [Supplemental] Complaint" and "Motion for Leave to File a Supplemental Complaint." For cause shown, the two motions to amend filed on September 17, 2004 (dkt. #4 and #5) are GRANTED. The motion to amend filed on September 20, 2004 (dkt. #6) is also GRANTED. The two motions to file a supplemental complaint, which were filed on November 29, 2004, (dkt. #9 and #10) are DENIED because the proposed amendments concerns events that occurred outside this judicial district.

The defendants named in the original complaint are HCCF Unit Manager Shelia Martin; TDOC Liaison Eric Hardison; HCCF Warden Glen Turner; HCCF Associate Warden Robert Adams; HCCF Assistant Internal Affairs Officer Bobby Howell; Grievance Board Chairperson Nena Moss; HCCF Unit Manager Victor Vines; and HCCF Counselor Bettie Boyd. The amendments filed on September 17, 2004 named as additional defendants

---

[1] On October 25, 2004, plaintiff notified the Clerk that he had been transferred to the Southeastern Tennessee State Regional Correctional Facility ("STSRCF") in Pikeville, Tennessee. On November 12, 2004, Harlan filed a motion complaining about a policy at the STSRCF requiring inmates to submit their outgoing mail in unsealed envelopes and seeking an order directing the warden to permit him to send his correspondence with the Court and with unspecified attorneys to the mailroom in sealed envelopes. The Court denied that motion on September 23, 2005 because, *inter alia*, plaintiff was no longer at the STSRCF.

HCCF Internal Affairs Officer Mr. Hudgins; Sergeant Davis, a visitation supervisor at the
HCCF; HCCF Chief of Security Sara Roberts; HCCF Assistant Chief of Security Mr. Jones;
Sergeant Shirley Robertson; HCCF Unit Manager Michael Young; Segregation Lieutenant
Sullivan; the Corrections Corporation of America ("CCA"); and Hardeman County,
Tennessee.

I.     Assessment of Filing Fee

Under the Prison Litigation Reform Act of 1995 ("PLRA"), 28 U.S.C. § 1915(a)-(b),
all prisoners bringing a civil action must pay the full filing fee of $150 required by 28 U.S.C.
§ 1914(a).[2]   The statute merely provides the prisoner the opportunity to make a
"downpayment" of a partial filing fee and pay the remainder in installments.

In this case, the plaintiff has properly completed and submitted an *in forma pauperis*
affidavit and an inmate trust fund account statement.   Pursuant to 28 U.S.C. § 1915(b)(1),
it is ORDERED that the plaintiff cooperate fully with prison officials in carrying out this
order. It is further ORDERED that the trust fund officer at plaintiff's prison shall calculate
a partial initial filing fee equal to twenty percent (20%) of the greater of the average balance
in or deposits to the plaintiff's trust fund account for the six months immediately preceding
the completion of the affidavit.  When the account contains any funds, the trust fund officer
shall collect them and pay them directly to the Clerk of Court.  If the funds in plaintiff's
account are insufficient to pay the full amount of the initial partial filing fee, the prison

---

[2]   Effective March 7, 2005, the civil filing was increased from $150 to $250.  However, the complaint in
this case was filed prior to March 7, 2005; therefore, the $150 filing fee will be applied.

official is instructed to withdraw all of the funds in the plaintiff's account and forward them to the Clerk of Court. On each occasion that funds are subsequently credited to plaintiff's account the prison official shall immediately withdraw those funds and forward them to the Clerk of Court, until the initial partial filing fee is paid in full.

It is further ORDERED that after the initial partial filing fee is fully paid, the trust fund officer shall withdraw from the plaintiff's account and pay to the Clerk of this Court monthly payments equal to twenty percent (20%) of all deposits credited to plaintiff's account during the preceding month, but only when the amount in the account exceeds $10, until the entire $150 filing fee is paid.

Each time that the trust fund officer makes a payment to the Court as required by this order, he shall print a copy of the prisoner's account statement showing all activity in the account since the last payment under this order and file it with the Clerk along with the payment. All payments and account statements shall be sent to:

Clerk, United States District Court, Western District of Tennessee, 262 U.S. Courthouse, 111 S. Highland Ave., Jackson, TN 38301

and shall clearly identify plaintiff's name and the case number on the first page of this order.

The obligation to pay this filing fee shall continue despite the immediate dismissal of this case. 28 U.S.C. § 1915(e)(2). If plaintiff is transferred to a different prison or released, he is ORDERED to notify the Court immediately of his change of address. If still confined he shall provide the officials at the new prison with a copy of this order. If the plaintiff fails to abide by these or any other requirement of this order, the Court may impose

appropriate sanctions, including a monetary fine, without any additional notice or hearing by the Court.

The Clerk shall mail a copy of this order to the prison official in charge of prison trust fund accounts at plaintiff's prison.  The Clerk is further ORDERED to forward a copy of this order to the warden of the WCF to ensure that the custodian of the plaintiff's inmate trust account complies with that portion of the PLRA pertaining to the payment of filing fees.  However, the Clerk shall not issue process or serve any other papers in this case.

II.     Analysis of Plaintiff's Claims

In his original complaint, Harlan alleges that, on March 16, 2004, defendant Howell placed him in segregation on the basis of confidential information and without doing an independent investigation.  Although this allegation is not clear, it seems the plaintiff was charged with an unspecified disciplinary offense.  Two days later, on March 18, 2004, plaintiff went before the disciplinary board and all charges were dismissed.  Plaintiff was released from segregation on March 26, 2004.

On April 1, 2004, plaintiff was called to defendant Martin's office and informed that he was being placed in protective custody because she had confidential information his life was in danger.  The complaint alleges, vaguely, that "I later found out that my life was allegedly in danger from the prisoners of the same incident," which presumably refers to the March 16, 2004 incident that resulted in the filing of disciplinary charges against Harlan and others.  The protective custody board told the plaintiff he would be held in segregation, per the warden's order, pending a transfer.  Plaintiff complains that neither defendant Martin nor

6

anyone else talked to him about his life being in danger.

On April 7, 2004, plaintiff met with defendants Vines and Boyd, who are members of the protective custody board. They advised plaintiff he was being placed in protective custody and held in segregation pending a transfer. He complains that he was not allowed to make any oral or written statement. The plaintiff remained in segregation until he was placed in the protective custody unit on May 22, 2004. During the time he was in protective custody, plaintiff was not given a thirty-day review of his placement and the protective custody counselor did not come to talk to him.

Plaintiff contends that defendants Turner, Adams, and Hardison have conspired to keep the plaintiff housed in segregation to cover up unspecified violations and to keep him housed in protective custody even though he had no incompatibles at the HCCF. Defendant Moss allegedly returned unspecified grievances filed by the plaintiff on the ground they were not grievable. Plaintiff sought compensatory and punitive damages.

In his September 17, 2004 filings, the plaintiff asserted that defendant Moss had provided confidential information concerning the plaintiff's family members to another inmate on an unspecified date. Plaintiff contends he was able physically to retrieve some of that information from the inmate. On September 10, 2004, plaintiff asked defendant Robertson to ascertain this inmate's name so the plaintiff could file a grievance about the incident. Defendant Robertson allegedly refused to do so and, after a verbal altercation, plaintiff was allegedly locked in segregation and charged with the disciplinary offense of creating a disturbance. The plaintiff also asserts that this action was taken in retaliation for

his previous filing of grievances and the commencement of this action and a state court action concerning the visitation privileges of the plaintiff's stepsister.

The plaintiff further alleges that, on June 14, 2003, unspecified prison officials revoked the visitation privileges of plaintiff's stepsister, Verda Jackson, because criminal charges had been lodged against her. Those charges were dismissed on September 9, 2003 and the state court ordered "the defendants" to remove all restrictions on the Jackson's visits. According to the plaintiff, "[a]ll of the listed defendants have refused to obey this court order" and have retaliated against the plaintiff by means of threats and release of the plaintiff's personal information to inmates, who have written threatening letters to plaintiff's family members.

The Sixth Circuit has held that 42 U.S.C. § 1997e(a) requires a federal court to dismiss a complaint without prejudice whenever a prisoner brings a prison conditions claim without demonstrating that he has exhausted his administrative remedies. Brown v. Toombs, 139 F.3d 1102 (6th Cir. 1998); see Porter v. Nussle, 534 U.S. 516, 532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); Booth v. Churner, 532 U.S. 731 (2001) (prisoner seeking only money damages must exhaust administrative remedies although damages are unavailable through grievance system). This requirement places an affirmative burden on prisoners of pleading particular facts demonstrating the complete exhaustion of claims. Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000). To comply with the mandates of 42 U.S.C.

8

§ 1997e(a):

> a prisoner must plead his claims with specificity and show that they have been
> exhausted by attaching a copy of the applicable administrative dispositions to
> the complaint or, in the absence of written documentation, describe with
> specificity the administrative proceeding and its outcome.

Knuckles El, 215 F.3d at 642; see also Boyd v. Corrections Corp. of Am., 380 F.3d 989,

985-96 (6th Cir. 2004) (describing the standard for demonstrating exhaustion when prison

officials fail to respond in a timely manner to a grievance), *cert. denied*, 125 S. Ct. 1639

(2005); Baxter v. Rose, 305 F.3d 486 (6th Cir. 2002) (prisoner who fails to allege

exhaustion adequately may not amend his complaint to avoid a *sua sponte* dismissal); Curry

v. Scott, 249 F.3d 493, 503-04 (6th Cir. 2001) (no abuse of discretion for district court to

dismiss for failure to exhaust when plaintiffs did not submit documents showing complete

exhaustion of their claims or otherwise demonstrate exhaustion). Furthermore, § 1997(e)

requires the prisoner to exhaust his administrative remedies before filing suit and, therefore,

he cannot exhaust those remedies during the pendency of the action. Freeman v. Francis,

196 F.3d 641, 645 (6th Cir. 1999). Finally, the Sixth Circuit recently held that district courts

are required to dismiss a complaint in its entirety, pursuant to 42 U.S.C. § 1997e(a), that

contains any unexhausted claims. Jones Bey v. Johnson, 407 F.3d 801, 805-09 (6th Cir.

2005).

        In this case, the plaintiff has not satisfied his burden of demonstrating, through

particularized averments, that he exhausted his administrative remedies as to his claims. The

plaintiff has not attached copies of any grievances, or responses to grievances, to his

complaint. In his original complaint, the plaintiff asserted, in response to the question what

steps he took, "[f]iling grievance about the TDOC policies and Tenn. Code Ann. violation

that was made unfairly." In response to the question about the result of his grievance

process, plaintiff asserts that "[g]rievance did not get process, they was sent back stating

inappropriate to grievance process." That vague statement is insufficient to demonstrate that

the plaintiff filed a grievance with respect to each of the issues raised in the complaint and

that he named each of the individual defendants, as required by Moorer v. Price, 83 Fed.

Appx. 770, 772 (6th Cir. Dec. 9, 2003) (plaintiff did not exhaust claim against warden

because his grievance did not identify the warden or articulate any claim against her),

Thomas v. Woolum, 337 F.3d 720, 733-34 (6th Cir. 2003), and Curry, 249 F.3d at 504.

Moreover, pursuant to TDOC policy, a determination that a matter is not grievable is itself

appealable through the grievance process. See TDOC, Admin. Pol. & Proc., Index No.

501.01, ¶ VI.G (May 1, 2004) ("If the chairperson determines a matter to be non-grievable,

the grievant may appeal that decision.").

Moreover, the complaint is silent about the plaintiff's attempts to exhaust the claims

set forth in his amendments. The fact that plaintiff has not exhausted his administrative

remedies is underscored by the fact that the amendment filed on September 17, 2004

includes a claim against defendant Robertson that occurred on September 10, 2004.

The Sixth Circuit recently stated that "[a] plaintiff who fails to allege exhaustion of

administrative remedies through 'particularized averments' does not state a claim on which

10

relief may be granted, and his complaint must be dismissed *sua sponte*." Baxter, 305 F.3d at 489. Moreover, pursuant to the recent decision in Jones Bey, a district court must dismiss any complaint that contains unexhausted claims rather than attempting to sever the exhausted claims. Accordingly, the Court DISMISSES the entire complaint, without prejudice, pursuant to 42 U.S.C. § 1997e(a).[3]

III.    Appeal Issues

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis*. Twenty-eight U.S.C. § 1915(a)(3) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith. The good faith standard is an objective one. Coppedge v. United States, 369 U.S. 438, 445 (1962). An appeal is not taken in good faith if the issue presented is frivolous. Id. Accordingly, it would be inconsistent for a district court to determine that a complaint should be dismissed prior to service on the defendants, yet has sufficient merit to support an appeal *in forma pauperis*. See Williams v. Kullman, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983). The same considerations that lead the Court to dismiss this case also compel the conclusion that an appeal would not be taken in good faith.

It is therefore CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal in this matter by plaintiff is not taken in good faith.

---

[3] As the Sixth Circuit has explained, "If the plaintiff has exhausted his administrative remedies, he may always refile his complaint and plead exhaustion with sufficient detail to meet our heightened pleading requirement, assuming that the relevant statute of limitations has not run." Baxter, 305 F.3d at 489.

The final matter to be addressed is the assessment of a filing fee if plaintiff appeals the dismissal of this case.[4]  In McGore v. Wrigglesworth, 114 F.3d 601, 610-11 (6th Cir. 1997), the Sixth Circuit set out specific procedures for implementing the PLRA. Therefore, the plaintiff is instructed that if he wishes to take advantage of the installment procedures for paying the appellate filing fee, he must comply with the procedures set out in McGore and § 1915(a)-(b).

IT IS SO ORDERED this _____ day of November, 2005.


_____
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[4]  Effective November 1, 2003, the fee for docketing an appeal is $250.  See Judicial Conference Schedule of Fees, ¶ 1, Note following 28 U.S.C. § 1913.  Under 28 U.S.C. § 1917, a district court also charges a $5 fee.

12

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 17 in
case 1:04-CV-01218 was distributed by fax, mail, or direct printing on
November 30, 2005 to the parties listed.

---

Marcellas Harlan
WCFA
211002
P.O. Box 679
Whiteville, TN 38075

Honorable James Todd
US DISTRICT COURT